Patrick J. Schurr
State Bar No. 17853530
patrick.schurr@solidcounsel.com
SCHEEF & STONE, L.L.P.
2600 Network Boulevard
Suite 400
Frisco, Texas 75034
Telephone: 214.472.2100
Telecopier: 214.472.2150

ATTORNEYS FOR MARSHALL SQUARE, L.L.C.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| IN RE: | § |
| | § |
| BBL BUILDERS, L.P., | §   CASE NO. 16-41880-BTR-11 |
| | § |
| Debtor. | § |

**MOTION OF MARSHALL SQUARE, L.L.C. FOR PRODUCTION
OF DOCUMENTS AND EXAMINATION OF THE DEBTOR
PURSUANT TO BANKRUPTCY RULE 2004**

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE, OR DECEMBER 23, 2016, UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS APPLICATION SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING. IF YOU FAIL TO APPEAR AT ANY SCHEDULED HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

COMES NOW MARSHALL SQUARE, L.L.C. ("Marshall"), a creditor in the above matter and would show the Court as follows:

# I.
## RELIEF REQUESTED

1.      Pursuant to Federal Bankruptcy Rule of Procedure 2004, Marshall requests that the Court enter an order authorizing Marshall (1) request that the Debtor, BBL Builders, L.P., produce the documents on the attached Exhibit "A" on or before January 9, 2017; (2) identify the Debtor's corporate representatives or employees concerning the subject matters on the attached Exhibit "B" during the week of January 16, 2017.

# II.
## JURISDICTION

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, 11 U.S.C. §365, and Rules 2004, 7034 and 9014 of the Federal Rules of Bankruptcy Procedure. This matter is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (O).

# III.
## Background

3.      On or about October 2014, Movant as Owner and the Debtor as Contractor executed that certain AIA Document A202-2007 Standard Form of Agreement (the "Contract") for the construction of the project located at 9017 North University Avenue, Oklahoma City, OK 73114 (the "Project").

4.      On or about June 1, 2016, BBL submitted draw request no. 18 on the Project to Movant in the amount of $1,707,425.60 representing invoices from subcontractors working on the Project on behalf of BBL and one half of the retainage (the "June 2016 Draw").

5.      Movant funded the June 2016 Draw.

6.      On September 13, 2016, Movant advised Debtor of several breaches under the

Contract and demanded performance thereunder within ten (10) days of the letter otherwise the Owner would exercise its rights under the Contract to complete the Project.

7. On October 14, 2016, the Debtor filed for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date").

8. On the Petition Date, via electronic mail, the Debtor notified the subcontractors of the Project that the Debtor had stopped work at the Project and for the subcontractors to cease all work at the Project due to the Debtor's filing for relief under chapter 11 of the Bankruptcy Code.

9. The Project is not complete.

10. On November 28, 2016, the Debtor's representative testified that BBL had on deposit at least $500,000 of the June 2016 Draw in its bank account at M&T Bank as of the Petition Date.

11. By order dated November 28, 2016, the Court approved the rejection of the Contract so as to allow Movant to engage a replacement general contractor to complete the Project and to employ the subcontractors to finish their work on the Project (Document No. 113).

## IV.
### ARGUMENTS AND AUTHORITIES

12. Rule 2004 provides authority for the Court to order an examination of any entity if such examination relates "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate … [and to] any other matter relevant to the case or to the formulation of a plan." *See* FED. R. BANKR. P. 2004(a) and (b). Examinations under Rule 2004 are allowed for the "purpose of discovering assets and unearthing frauds." *In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr. D. Mass. 1983).

13. As stated above, the Debtor has testified that approximately $500,000 of trust funds

paid by Marshall to BBL for the subcontractors of the Project remain in its bank account at M&T. The Project is not complete yet BBL has walked away from the Project shortly before the Petition Date. Marshall has received numerous claims of subcontractors claiming that they have not been paid by BBL despite the several millions of dollars paid by Marshall to BBL for the services and materials provided by the subcontractors to the Project. As such, Marshall, pursuant to Rule 2004, is entitled to examine the Debtor on matters relating to the payments made by Marshall to BBL on the Project.

14. By this motion, Marshall requests entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure authorizing Marshall to request certain documents from the Debtor and to examine the Debtor's representatives or employees so that Marshall can further investigate the Debtor's actions as they relate to the payments made by Marshall to BBL for the payment of the subcontractors at the Project.

WHEREFORE, Movant respectfully requests that the Court enter the attached proposed order granting the relief requested herein and such other and further relief as is just and proper.

Respectfully submitted this the 9th day of December, 2016.

SCHEEF & STONE, L.L.P.
2600 Network Boulevard, suite 400
Frisco, Texas 75034
Telephone: 214.472.2100
Telecopier: 214.472.2150


By:   /s/ Patrick J. Schurr
    Patrick J. Schurr
    State Bar No. 17853530

ATTORNEYS FOR MARSHALL SQUARE, L.L.C.

## **CERTIFICATE OF CONFERENCE**

On November 9, 2016, I requested from Mr. Liepins, counsel for the Debtor, an accounting of the funds paid to the Debtor by my client, Marshall Square, LLC, from the inception of the business relationship until the Petition Date.

At the creditors' meeting on November 18, 2016, Mr. Liepins stated that the Debtor was still working on the accounting and intended to file a motion to disburse the trust funds held by the Debtor in its M&T Bank account shortly.  I also requested the names of the persons with the Debtor who knew about the client's project and possible dates for their deposition.  Mr. Liepins stated he would get back to me with both.

On November 29, 2016, I followed up with Mr. Liepins regarding (a) the accounting; (b) the filing of the motion to disburse the trust funds; and (c) dates and identity of the persons to testify at a 2004 examination.

On December 6, 20916, I once again sought to follow up with Mr. Liepins via email requesting he respond to me before 12 noon on December 7, 2016 regarding the foregoing issues. I received no response verbally or via email regarding any of the items identified in my November 29, 2016 communication to Mr. Liepins.



　　　　／s/ Patrick J. Schurr

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document was served electronically mailed to the parties registered or otherwise entitled to receive electronic notices in these cases pursuant to the Electronic Filing Procedures in this District or via U.S. first class mail, postage prepaid, to the parties who have requested notice but are not participating in the ECF System, on this the 9th day of December, 2016.

　　　　／s/ Patrick J. Schurr

MOTION OF MARSHALL SQUARE, L.L.C. FOR PRODUCTION OF DOCUMENTS AND
EXAMINATION OF DEBTOR PURSUANT TO BANKRUPTCY RULE 2004 - PAGE 5
N:\pschurr\Marshall\2004 exam motion.wpd

# EXHIBIT "A" - DOCUMENT REQUESTS

# DEFINITIONS AND INSTRUCTIONS

1. The term "*Debtor*" or "*you*" means, collectively or individually, BBL Builders, L.P., and all agents, principals, affiliates, partners, officers, directors, managing agents, or other persons acting (or purporting to act) on their behalf.

2. The term "*Petition Date*" means October 14, 2016.

3. The term "*affiliate*" as used herein shall take the same meaning articulated in 11 U.S.C. §101(2)(A), and shall include the Debtor.

4. The term "*Bank*" shall mean M&T Bank, Manufacturers and Traders Trust Company, 327 Great Oaks Blvd, Albany, NY 12203 and includes all of its attorneys, agents, and other natural persons or business or legal entities acting or purporting to act for or on behalf of it, whether authorized to do so or not.

5. Unless otherwise defined, the term "*Bette*" shall mean Mark Bette, and shall include his attorneys, agents, and other natural persons or business or legal entities acting or purporting to act for or on his behalf, whether authorized to do so or not.

6. The term "*Non-Debtor Affiliate*" shall mean Bette Limited Partnership and Martex, LLC and shall include their respective attorneys, agents, and other natural persons or business or legal entity partially or fully owned by Bette, the Debtor or otherwise affiliated with the aforementioned entities.

7. The term "*Communication*" or "*Communications*" is used in the broadest and most expansive sense and includes, without limitation, any internal and/or external written, oral, electronic and/or other communication or exchange of ideas and/or information of whatever sort, as well as any document which records, reflects and/or pertains to any such communication, including, without limitation, letters, telegrams, telexes, facsimiles, emails, message slips, personal calendars, personal notes, memoranda and/or sound recordings and transcripts thereof.

8. The term "*Person*" as used herein refers to any natural person, or any business, legal, or governmental entity or association.

9. The term "*transfers*" refers to all of the transactions listed in the Debtor's Statement of Financial Affairs along with any other transaction made between the Debtor and/or a non debtor affiliate or the Debtor and any creditor of the Debtor within two years of the Petition Date.

10. The term "*describe*" as used herein means to state with particularity, including but

not limited to, each date, fact, event, occurrence, to identify each document, and to identify each individual who can testify as to such stated dates, facts, events, occurrences and documents.

11.  The term "*identify*" or "*list*" when referring to a person, means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person the present or last known place of employment.

12.  The term "*relate to,*" "*relates to*," "*relating to*" or "*refer to*" or "*pertaining to*" any given subject when used to specify a document, Communication, or statement, means any document, Communication or statement that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any manner whatsoever pertinent to that subject.

13.  The words "*or*" and "*and*," as used herein, shall mean "and/or," and thus "and" and "or" shall each include both the conjunctive and the disjunctive.

14.  The words "*any*" and "*all*" as used herein, shall mean "any and all" and thus "any" and "all" shall each include the conjunctive and the disjunctive.

15.  The term "Pr0ject" shall mean that certain real property located at 9017 North University Avenue, Oklahoma City, OK 73114 and the subject of that certain AIA Document A202-2007 Standard Form of Agreement (the "Contract").

## INSTRUCTIONS

1.  Except where otherwise specified, the relevant time period for this notice shall be October 1, 2014 until the Petition Date.

2.  The information and Communications sought in this notice are not limited to your personal knowledge but extend as well to any knowledge or information or Communications available to you or known to your attorneys, agents, or potential witnesses on your behalf.

3.  To the extent that the information sought in this notice is incorporated or contained in a Document or Communication, please specifically identify the Document or Communication.

4.  This notice shall be deemed continuing in nature so as to require you to serve supplemental documents upon the attorneys of record for Marshall if the Debtor later obtains information, including, but not limited to, Documents and Communications, discovered or identified by you subsequent to the date of your initial production.

5.  Each Document or Communication produced pursuant to this notice shall be produced as it is kept in the usual course of business in which these Documents or Communications were located when the notice was served, or shall be organized and labeled to correspond with the

categories in the notice.

6.	You are instructed that any and all Documents or Communications in your possession, custody or control include those in your constructive possession whereby you have the right to compel production of the Document or Communication from a third party (including any agent, employee, attorney, accountant or other representative).

7.	To the extent the location of a Document or Communication called for by this notice is unknown to you, please state that you lack knowledge of the Document or Communication's location. If any estimate can reasonably be made as to the location of an unknown Document or Communication, describe the Document or Communication with sufficient particularity so that it can be identified, set forth your best estimate of the Document or Communication's location and describe the basis upon which you have made this estimate of the Document of Communication's location.

**REQUESTS FOR PRODUCTION**

1. Any and all mechanics and materialmen's lien releases, partial, conditional or full, from subcontractors paid from proceeds of Draw Request Nos. 18-21

2. All bank account statements, canceled checks and deposit slips or wire transfer receipts, for the period beginning October 1, 2014 through the current date for the account of BBL at the Bank, including but not limited to account no. xxxxxx6819.

3. All documents evidencing payments made to subcontractors by BBL from June 1, 2016 to the current date and attributable to work done at the Project.

4. All documents evidencing payments made to Mark Bette or any affiliate of Mark Bette by BBL from October 1, 2014 to the current date and attributable to: (i) work done at the Project; or (ii) proceeds of payments made by Marshall to BBL.

5. Copies of any General Agreements of Indemnity and similar agreements between BBL and/or its affiliates, and any surety company for bonds posted by BBL in connection with the Project.

6. Any of the Debtor's daily work reports and daily logs relating to the Project including field reports made by any supervisory personnel, and reports in the Debtor's possession or subject to its control made by any of Debtor's subcontractors' personnel.

7. Any and all daily diaries relating to the Project made by the Debtor and all diaries in the Debtor's possession or subject to its control prepared by any of the Debtor's subcontractors' personnel.

8. Produce the Debtor's original schedule for the Project.

9. All documents in the form of construction schedules and each and every modification or adjustment made to each schedule, including, but not limited to, all critical path documents, bar charts, graphs or other documents of any kind relating to such construction schedules, any modifications thereto and any schedules that were specifically prepared concerning any portion of the work performed on the Project.

10. All documents that reflect the dates upon which labor was performed or materials were supplied to the Project, including, but not limited to, the date upon which such work was first performed or materials were first delivered to the Project and the date upon which the last labor was performed or the last materials were supplied to the Project by the Debtor or its subcontractors and/or suppliers.

11. All cost reports which the Debtor prepared relating to the Project.

12. All estimates which the Debtor prepared relative to the costs of performing the work under the Contract.

13. All invoices for materials which the Debtor purchased for consumption during the Project or for incorporation into the Project.

14. All time cards and/or other records relative to equipment worked and/or maintained on the Project.

15. All of your payroll records and time cards from October 1, 2014 through the Petition Date, inclusive, for all of Debtor's employees whether those records pertain to the Project or some other project.

16. All correspondence including memos, notes, letters, e-mail, telegrams, or other handwritten, typewritten, telephonically transmitted, computer generated or other electronically or manually prepared correspondence regarding the Project, between:
    a. the Debtor and Marshall;
    b. the Debtor and its subcontractors and/or suppliers on the Project; and
    c. The Debtor and the architect and/or engineer on the Project.

17. All of your internal memoranda, reports, projections, progress reports, draft documents, e-mail or other electronically or manually prepared internal documents relating to the Project.

18. All documents relating to change orders, modifications, additions or deletions from the scope of design services or labor to be performed or materials to be supplied by the Debtor for the Project.

19. Any preliminary, working and final drawings prepared by you for the Project.

20. All documents relating to current unpaid contact balances remaining unpaid under any agreement between you and your subcontractors or suppliers on the Project.

21. All documents relating to a description of deficiencies in the work performed by your subcontractors on the Project.

22. All documents relating to or supporting any claims of offset or back charge by the Debtor against any of the Debtor's subcontractors or suppliers who provided materials or performed work at the Project.

23. All documents relating to the establishment of the date of substantial completion of the work to be performed and materials and equipment to be supplied for the Project under the Contract.

24. All documents relating to the establishment of the date of final completion of the work to be performed and materials and equipment to be supplied for the Project under the Contract.

25. All documents relating to claims made by your subcontractors and/or suppliers against the Debtor relating to the Project.

# EXHIBIT B

The Debtor shall designate one or more individuals to testify regarding the following subjects:

1. Any and all information relating to any transfers made by the Debtor to Mark Bettes or any Non-Debtor Affiliates of the Debtor.

2. Any and all information relating to negotiations with Marshall.

3. Any and all information relating to negotiations with subcontractors who were to perform services at the Project under an agreement with the Debtor.

4. Any and all information relating to negotiations with subcontractors who were to provide materials to the Project under an agreement with the Debtor.

5. Any and all information relating to the structure and organization of the Debtor.

6. Any and all information relating to any agreements between the Debtor and Marshall or any agents or representatives of those parties.

7. Any and all information relating to communications between the Debtor and Marshall or any agents or representatives of those parties.

8. Any and all information relating to services performed by subcontractors of the Debtor pursuant to any agreement between the Debtor and such subcontractors at the Project.

9. Any and all information relating to materials provided by subcontractors of the Debtor pursuant to any agreement between the Debtor and such subcontractors at the Project.

10. Any and all information relating to time and expenses recorded by the Debtor for work performed by subcontractors at the Project.

11. Any and all information relating to invoices received by the Debtor from subcontractors for services performed by such subcontractors at the Project.

12. Any and all information relating to invoices received by the Debtor from subcontractors for materials provided by such subcontractors at the Project.

13. Any and all information relating to payments received by the Debtor from Marshall pursuant to the Contract.

14. Any and all information relating to payments made by the Debtor to subcontractors for materials provided by such subcontractors at the Project.

15. Any and all information relating to payments made by the Debtor to subcontractors for services performed by such subcontractors at the Project.

16. Any and all information relating to the mount of compensation of the Debtor pursuant to the Contract.

17. Any and all information, if any, pertaining to communications with subcontractors who performed services at the Project under an agreement with the Debtor.

18. Any and all information, if any, pertaining to communications with subcontractors who provided materials to the Project under an agreement with the Debtor.

19. Any and all information, if any, pertaining to communications with, or relating to, the Project.

20. Any and all information regarding or relating to mechanics and materialmen's lien releases, partial, conditional or full, from subcontractors paid from proceeds of Draw Request Nos. 18-21.

21. Any and all information relating to the Debtor's bank account for the period beginning October 1, 2014 through the current date for the account of BBL at the Bank, including but not limited to account no. xxxxxx6819.

22. Any and all information relating to documents evidencing payments made to subcontractors by BBL from June 1, 2016 to the current date and attributable to work done at the Project.

23. Any and all information relating to documents evidencing payments made to Mark Bette or any affiliate of Mark Bette by BBL from October 1, 2014 to the current date and attributable to: (i) work done at the Project; or (ii) proceeds of payments made by Marshall to BBL.

24. Any and all information relating to any General Agreements of Indemnity and similar agreements between BBL and/or its affiliates, and any surety company for bonds posted by BBL in connection with the Project.